Mark KAZMIER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–0605–CR–380.

Court of Appeals of Indiana.

April 4, 2007.

Heather McClure O'Farrell, Thomas B. O'Farrell, McClure & O'Farrell, P.C., Westfield, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Mark Kazmier appeals his conviction for Battery Resulting in Bodily Injury,[1] a class A misdemeanor. Specifically, Kazmier argues that (1) there was insufficient evidence to support his conviction, and (2) the trial court's domestic violence determination constituted judicial factfinding in violation of the rule announced in *Blakely v. Washington.*[2] Finding that the evidence was sufficient and that the domestic violence determination did not violate Kazmier's Sixth Amendment rights under *Blakely,* we affirm the judgment of the trial court.

### FACTS

On July 26, 2005, Amy Kazmier told Kazmier, her husband of twenty-three years, that she wanted a divorce. Amy spoke with an attorney the next day, and a confrontation between the Kazmiers ensued at their Westfield home on the evening of July 28, 2005. During the argument, Kazmier told Amy, "I know enough about forensics that I can take you out and kill you without anybody knowing it. I can drag you out and drown you in that pond [behind the house] and nobody would know." Tr. p. 15. When Amy told Kazmier that she believed those events were unlikely, Kazmier approached her and began to forcibly poke her with his finger. Kazmier proceeded to climb on top of Amy, place his knee against her chest, and cover her mouth with his hand. Amy struggled, freed herself, and fled to a neighbor's house with the couple's two children. After speaking with her attorney, Amy called the police. As a result of the attack, Amy suffered bruising on her body and arms and a scratch on the left side of her face.

On July 29, 2005, the State charged Kazmier with class A misdemeanor battery. On February 1, 2006, the State filed a motion to amend the charge to class A misdemeanor domestic battery. That same day, Kazmier and the State reached an agreement whereby Kazmier waived his right to a jury trial and agreed that Amy would receive "the guns currently in the possession of the Westfield Police Department"[3] in the Kazmiers' dissolution action in exchange for the State's agreement to dismiss its motion to amend. Appellant's App. p. 11.

On February 2, 2006, a bench trial was held on the class A misdemeanor battery charge, and the trial court found Kazmier guilty as charged. That same day, the trial court issued a domestic violence determination pursuant to Indiana Code section 35–38–1–7.7 (the domestic violence determination statute), finding that Kazmier had "committed a crime of domestic violence." *Id.* at 15. The trial court held a sentencing hearing on March 6, 2006, and sentenced Kazmier to one year of incarceration, with all but eighteen days suspended to probation. Kazmier now appeals.

### DISCUSSION AND DECISION

#### I. Sufficiency

■ Kazmier argues that there was insufficient evidence to support his class A misdemeanor battery conviction. Specifically, Kazmier argues that it was improper for the trial court to convict him of battery because it acknowledged that it did not

---

1. Ind.Code § 35–42–2–1(a)(1)(A).

2. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

3. Neither party details exactly how the Westfield Police Department came to possess the firearms or the number of firearms that were in the department's possession.

believe either Amy's or Kazmier's depiction of events at the bench trial.

The standard of review for sufficiency claims is well settled. In addressing Kazmier's challenge, we neither reweigh the evidence nor reassess the credibility of witnesses. *Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). Instead, we consider the evidence most favorable to the verdict and draw all reasonable inferences that support the ruling below. *Id.* We affirm the conviction if there is probative evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *O'Connell v. State,* 742 N.E.2d 943, 949 (Ind.2001). While the State may prove its case by circumstantial evidence alone, *Gambill v. State,* 675 N.E.2d 668, 674 (Ind.1996), a judgment will be sustained based on circumstantial evidence only if that evidence supports a reasonable inference of guilt, *Tate v. State,* 835 N.E.2d 499, 510 (Ind.Ct.App.2005), *trans. denied.*

To convict Kazmier of class A misdemeanor battery, the State was required to prove beyond a reasonable doubt that Kazmier knowingly or intentionally touched Amy in a rude, insolent, or angry manner, which resulted in bodily injury to Amy. I.C. § 35–42–2–1(a)(1)(A). Both Kazmier and Amy testified at trial. As support for his argument, Kazmier notes that he also had injuries after the couple's confrontation and that the trial court expressed hesitation about both parties' credibility:

> Frankly, I am not sure I entirely believe either of you, Mrs. Kazmier, Mr. Kazmier. I think there are elements of your stories that I do believe. But, I believe[,] Mr. Kazmier, you have ... minimized what did in fact actually occur. Mrs. Kazmier, I believe you have embellished. That is the way I see it.

Tr. p. 146.

Kazmier's argument is premised on his assumption that the trial court did not believe *any* of Amy's testimony. However, the trial court also stated:

> I think also the marks on [Amy's] face, although slight, she didn't get those from her attacking [Kazmier] either. She got those clearly during this altercation as well. I think it is very clear and I do find beyond a reasonable doubt that Mr. Kazmier that you did touch Amy Kazmier in a rude, insolent or angry manner. And did cause some injury to her.

*Id.* at 148. While the trial court opined that the confrontation might have been mutual, it clearly stated that Kazmier was the defendant on trial and that Amy's guilt was "not for this Court to determine." *Id.*

At trial, the State presented evidence that Kazmier "pok[ed Amy] with his hand forcefully[,]" "put his knee on top of [her]," and "put [his] gloved hand over [her] mouth." *Id.* at 15–16. As a result of Kazmier's actions, Amy had bruises on her arms and body and a scratch on the left side of her face. *Id.* at 24; Ex. 3. This evidence was sufficient to convict Kazmier of class A misdemeanor battery. Kazmier's argument on appeal that his conviction was improper because the trial court expressed hesitancy about Amy's testimony is merely an invitation for us to reweigh the evidence and assess the credibility of witnesses—an invitation we decline. Thus, we conclude that Kazmier's sufficiency challenge fails.

## II. Domestic Violence Determination

Kazmier argues that the trial court erred by making a domestic violence determination because he waived his right to a jury trial in exchange for the State's agreement to withdraw its motion to add the domestic violence charge. Specifically, Kazmier argues that the domestic violence

determination statute is unconstitutional as applied to him because the trial court's determination violated his Sixth Amendment rights as detailed in *Blakely*. 542 U.S. at 296, 124 S.Ct. 2531.

In relevant part, Indiana Code section 35–41–1–6.3 defines a "crime of domestic violence" as an offense that has as an element the use of physical force against a spouse. Here, the trial court made a domestic violence determination regarding Kazmier pursuant to the domestic violence determination statute, which provides:

(a) At the time of sentencing, a court[4] shall determine whether a person has committed a crime of domestic violence (as defined in IC 35–41–1–6.3).

(b) A determination under subsection (a) must be based upon:

(1) evidence introduced at trial; or

(2) factual basis provided as part of a guilty plea.

(c) Upon determining that a defendant has committed a crime of domestic violence, a court shall advise the defendant of the consequences of this finding.

(d) A judge shall record a determination that a defendant has committed a crime of domestic violence on a form prepared by the division of state court administration.

I.C. § 35–38–1–7.7. The consequences of a domestic violence determination are outlined in Indiana Code sections 3–7–13–5 and 33–28–4–8 and "give the trial court authority to prohibit a person who commits an act of 'domestic violence' from possessing a gun in the future." *Goldsber-ry v. State*, 821 N.E.2d 447, 463–64 (Ind. Ct.App.2005).

*Goldsberry* is the only case in which we have previously analyzed the domestic violence determination statute. In *Goldsberry*, we held that the trial court erroneously applied the domestic violence determination statute because the defendant in that case committed the offense before the statute's effective date; therefore, the trial court's statutory application violated ex post facto laws. *Id.* In reaching that conclusion, we determined that the statute "explicitly indicated it is to amend the criminal code and the legislature placed [it] in Title 35. . . . [W]e believe the legislature **intended the sanction to be a criminal punishment.**" *Id.* at 465 (emphasis added). In light of that conclusion, we held that the statute could not be applied to Goldsberry without violating ex post facto laws.

Because *Goldsberry* held that the legislature intended for a domestic violence determination to be a criminal punishment, a trial court must be mindful of *Blakely* when making such a determination. *Blakely* reiterated the Sixth Amendment rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301, 124 S.Ct. 2531. In *Smylie v. State*, our Supreme Court held that *Blakely* applies to Indiana's sentencing scheme. 823 N.E.2d 679, 684–85 (Ind.2005). Summarizing *Blakely*'s application, our Supreme Court has explained:

---

**4.** Kazmier argues that the domestic violence determination statute would not have applied in his case if he had not waived his right to a jury trial because the statute specifies that the trial court, instead of a jury, is to make the determination. However, that argument is nonsensical, as the statute does not distinguish between bench and jury trials and plainly states that the trial court makes the determination at *sentencing*.

Under *Blakely*, a trial court in a determinate sentencing system such as Indiana's may enhance a sentence based only on those facts that are established in one of several ways: 1) as a fact of prior conviction; 2) by a jury beyond a reasonable doubt; 3) when admitted by a defendant; and 4) in the course of a guilty plea where the defendant has waived *Apprendi* rights and stipulated to certain facts or consented to judicial factfinding.

*Trusley v. State*, 829 N.E.2d 923, 925 (Ind. 2005).

In most situations, a trial court's application of the domestic violence determination statute will be straightforward because the defendant will have been convicted of a crime at the preceding trial that explicitly contains a domestic violence element—e.g. class A misdemeanor domestic battery. The situation here, however, is atypical because while Kazmier was *not* convicted of domestic battery, it is undisputed that the victim of the crime was his wife of twenty-three years.[5] Therefore, even though Kazmier was not convicted of domestic battery, the trial court still made a domestic violence determination because the statute requires the trial court to do so if the defendant committed a crime of domestic violence "based upon (1) the evidence introduced at trial; or (2) a factual basis provided as part of a guilty plea." I.C. § 35–38–1–7.7(b). The statute's plain language does not require the defendant to have been convicted of a crime that explicitly contains a domestic violence element—e.g. class A misdemeanor domestic battery—instead, it focuses on the factual evidence supporting the underlying conviction.

▉ Statutorily speaking, the only difference between class A misdemeanor battery and class A misdemeanor domestic battery is that the latter requires, as an additional element, that the victim be the spouse, former spouse, apparent spouse, or have a child with the aggressor. I.C. §§ 35–42–2–1, –1.3. At trial, Kazmier testified that Amy was his wife of twenty-three years. Tr. p. 91. For *Blakely* purposes, that testimony constituted an admission. *Weis v. State*, 825 N.E.2d 896, 906–07 (Ind. Ct.App.2005). Therefore, the trial court's domestic violence determination did not implicate *Blakely* because Kazmier's admission and his class A misdemeanor battery conviction supported the trial court's determination. *Trusley*, 829 N.E.2d at 925.

While the trial court acknowledged that it was aware of the pretrial agreement between Kazmier and the State, it emphasized that it was "not a party" to that agreement and that not making a domestic violence determination in this case would require the court "to engage in a legal fiction." Tr. p. 155, 156. While we understand Kazmier's frustration in making a pretrial agreement with the State to dismiss the domestic battery charge motion only to have the trial court later make a domestic violence determination, we are bound by the plain language of the statute.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

CRONE, J., concurs in result.

---

**5.** We are not holding that the trial court's domestic violence determination did not violate Kazmier's Sixth Amendment rights merely because it was obvious that Amy was his wife. Instead, as elaborated below, Kazmier testified at trial that Amy was his wife, and this testimony constituted an admission for *Blakely* purposes.